IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Abigail Longmore, Matthew Jackson, and Lucas Kuffrey**, Individually and on behalf of all others similarly situated, | |
| Plaintiffs, | CASE NO.: _____ |
| v. | JURY TRIAL DEMANDED |
| **Bio-Lab, Inc.; KIK Consumer Products, Inc.** | |
| Defendants. | |

### CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Abigail Longmore, Matthew Jackson, and Lucas Kuffrey, individually and on behalf of putative classes of all others similarly situated ("Class Members" or "Class(es)"), sue Defendants Bio-Lab, Inc. and KIK Consumer Products, Inc. and based on personal knowledge, investigation of counsel and review of public documents and information, allege as follows:

### INTRODUCTION

1. This Consolidated Class Action seeks redress for residents, property owners, employees and businesses living, working and/or located in and around the facility located in Conyers, Georgia owned and operated by the Defendants, which was the location of a chemical reaction on September 29, 2024, that resulted in the release of a large cloud of hazardous chemicals from the facility to the surrounding area, including the Plaintiffs' residences.   The chemical reaction at the Defendants' facility resulted in contamination of, and exposure to, massive amounts of hazardous chemicals, including chlorine, which is a toxic gas that can irritate the respiratory system, eyes, and skin. As a result of this release of chemicals and the resulting shelter-in-place orders for the surrounding area, Plaintiff and Class Members have all suffered, among other things,

1

loss of use and enjoyment of property, property damage, exposure to toxic material, inconvenience, disruption and economic damages as alleged more specifically below.

## **THE PARTIES**

2.      At all relevant times, Plaintiff Abigail Longmore is an adult citizen of Conyers, Georgia and is the owner-occupier of the real property located at 1300B Cooper Circle, Conyers, Georgia, 30012 which is located across the street from Defendants' Conyers chemical plant.   As a result of the chemical release on September 29, 2024, Longmore was exposed to toxic chemicals and was evacuated from her home.

3.      As a result of Defendants' negligent, careless, reckless, and/or intentional conduct in connection with the September 29, 2024, toxic chemical release, Plaintiff Longmore has suffered damages, including, but not limited to, past, present and future pain and suffering, an increased risk of future health complications from exposure to and inhalation of toxic chemicals, and contamination of her property by egregiously high and plainly dangerous levels of toxic chemicals and their byproducts dispersed by Defendants into the air, soil and water.

4.      Plaintiff Longmore seeks to represent the Residents Class as defined below.

5.      At all relevant times, Plaintiff Matthew Jackson is an adult citizen of Conyers, Georgia and is the owner-occupier of the real property located at 510 West High Tower Trail, Conyers, Georgia, 30012, which is located approximately three miles from Defendants' Conyers chemical plant.   As a result of the chemical release on September 29, 2024, Jackson was exposed to toxic chemicals and was evacuated from his home.

6.      As a result of Defendants' negligent, careless, reckless, and/or intentional conduct in connection with the September 29, 2024, toxic chemical release, Plaintiff Jackson has suffered damages, including, but not limited to, past, present and future pain and suffering, an increased

2

risk of future health complications from exposure to and inhalation of toxic chemicals, and contamination of his property by egregiously high and plainly dangerous levels of toxic chemicals and their byproducts dispersed by Defendants into the air, soil and water.

7.    Plaintiff Jackson seeks to represent the Residents Class as defined below.

8.    At all relevant times, Plaintiff Lucas Kuffrey is an adult citizen of Stone Mountain, Georgia and is employed at Matco Tools in Conyers, Georgia.  As a result of the chemical release on September 29, 2024, Jackson was exposed to toxic chemicals and was evacuated from his place of employment and not allowed to return for several days.

9.    As a result of Defendants' negligent, careless, reckless, and/or intentional conduct in connection with the September 29, 2024, toxic chemical release, Plaintiff Kuffrey has suffered damages, including, but not limited to, past, present and future pain and suffering, an increased risk of future health complications from exposure to and inhalation of toxic chemicals, and lost wages due to the closure of his place of employment.

10.    Plaintiff Kuffrey seeks to represent the Business Class as defined below.

11.    Defendant Bio-Lab, Inc. is a Delaware corporation with its principal place of business at 101 MacIntosh Blvd., Concord, Ontario, Canada L4K4R5, and a registered service agent of CT Corporation System, 289 S. Culver Street, Lawrenceville, GA, 30046-4805.  Upon information and belief, Bio-Lab, Inc. is a wholly owned subsidiary of KIK Consumer Products, Inc.

12.    Defendant KIK Consumer Products, Inc. is a Canadian corporation with its principal place of business at 101 MacIntosh Blvd., Concord, Ontario, Canada L4K4R5.

### JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action under the Class Action

Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed Plaintiff Class, on the one hand, and Defendant, on the other, are citizens of different states.

14.     This Court has personal jurisdiction over Defendants because Plaintiffs' claims arise out of Defendants' contacts and actions within this district.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Northern District of Georgia, and all Class Members were injured because of tortious activity in this District.

## FACTUAL ALLEGATIONS

*The Relationship Between Bio-Lab and KIK Consumer Products, Inc.*

16.     Both Bio-Lab, Inc. and KIK Consumer Products, Inc. operate out of the same corporate headquarters.

17.     Bio-Lab, Inc. and KIK Consumer Products, Inc. are jointly and severally liable for conduct alleged herein because they acted in concert and under alter ego and piercing the corporate veil theories, including based on the domination and /or control by KIK Consumer Products, Inc. and the interlocking and overlapping officers and directors.

*The September 29, 2024, Chemical Reaction and Release*

18.     Defendant Bio-Lab is a manufacturer of pool and spa chemicals under several different brands, including BioGuard, SpaGuard, Spa Essentials, Natural Chemistry, SeaKlear, and Aqua Pill.  Bio-Lab operates a chemical manufacturing plant on Old Covington Highway in Conyers, Georgia.

19.     On Sunday, September 29, 2024, a fire-suppression sprinkler at the Conyers plant

4

suddenly activated, spraying water all over the plant and on the chemicals located within the plant.

20.     The saturation of the chemicals in the plant by the water sprinklers caused a chemical reaction, producing a cloud of hazardous gas.  The reaction also caused a fire on the roof of the Conyers plant, causing smoke to pour out of the plant into the surrounding atmosphere.

21.     To extinguish the fire, firefighters had to use more water, which caused even more chemical reaction and the release of more toxic fumes and gases.

22.     The continuing chemical reaction and resulting fire caused hazardous chemicals, including chlorine, chloramine, and bromine to fill the air and permeate the surrounding community.

23.     Chlorine, Chloromine, and Bromine are all hazardous chemicals that can irritate the eyes, lungs and skin, and can cause nausea and vomiting.  Exposure to these chemicals is especially harmful to those with underlying health conditions such as asthma and chronic obstructive pulmonary disease, as well as those who are pregnant.

24.     The Occupational Safety and Health Administration has assigned a permissible exposure limit for chlorine at 1ppm.  Exposures of 5 to 15 ppm can cause eye and throat irritation, 40 to 60 ppm can cause lung injury, and 1000 ppm and over can cause death.

25.     As heavier gases, chlorine, chloromine and bromine can enter into buildings and stay present for long periods of time, causing continuing harm to those in their homes, businesses and schools.

26.     As a result of the chemical reaction, the Atmospheric Science and Chemistry Measurement Network detected a 1,400 times increase in the amount of chlorine-containing particles in the air, and a 170 times increase in the amount of bromine containing particles in the air.  Typically, there is little of either element in the air.

27.     As a result of the aforementioned chemical reaction and release, Rockdale County Georgia issued an evacuation order covering 8 square miles and affecting nearly 17,000 people living near the facility including, Plaintiff Longmore. Those evacuated were forced to find other accommodations at their own expense.   Rockdale County also issued a shelter-in-place order covering the entire county, nearly 90,000 people.  This shelter-in-place order advised all covered individuals to turn the air conditioning off and keep windows and doors shut.  The shelter-in-place order stayed in effect until 7:00 p.m. on Monday, September 30, 2024.  However, those living in close proximity to the Conyers plant were advised to remain sheltering in place through Friday, October 4, 2024.

28.     Parts of Interstate 20 were also closed in both directions until Monday, September 30, 2024, due to the heavy smoke.

29.     Schools and businesses in close proximity to the Conyers plant were forced to close for several days to protect students and customers.

30.     Even several days after the chemical reaction, the smoke and haze from the reaction lingered over and permeated the surrounding areas, with no clear indication as to the extent of the chemical contamination and potential short and long term health effects to those exposed to the hazardous chemicals.

31.     The September 29, 2024, chemical release is not the first incident at the Defendants' Conyers plant, as other chemical leaks have occurred in 2004, 2020, and 2021.

## CLASS ALLEGATIONS

32.     Plaintiffs bring this consolidated action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and, as warranted, 23(c)(4) on behalf of themselves and the following class of persons and organizations similarly situated for all direct, proximate, and

6

foreseeable losses caused by the September 29, 2024, chemical reaction, fire and resulting toxic chemical contamination. The proposed Classes, inclusive of subclasses, are hereby defined as follows:

1.     The Residents Class:

All individuals who resided within Rockdale County, Georgia and who were subject to evacuation or shelter-in-place orders and exposed to hazardous chemicals as a result of the fire and release of hazardous chemicals at the Bio-Lab facility in Conyers, Georgia beginning on September 29, 2024.

2.     The Businesses Class:

All individuals or legal entities who owned, were employees of, or operated a business within Rockdale County, Georgia whose businesses were closed as a result of the fire and release of hazardous chemicals at the Bio-Lab facility in Conyers, Georgia beginning on September 29, 2024.

33.     Excluded from the Class(es) are: (1) Defendants and any of their affiliates, parents or subsidiaries; all employees of Defendants; all persons who make a timely election to be excluded from the Class(es); and the judges assigned to this case, their immediate families, and court staff; and (2) insurers and insurance syndicates whose claims for damages regarding the September 29, 2024, chemical reaction and release, arise out of a right of subrogation, whether equitable, contractual or otherwise.

34.     Plaintiffs hereby reserve the right to amend or modify the Class definitions with greater specificity or division after having had an opportunity to conduct additional investigation and discovery.

35.     The multiple Classes all involve identical factual issues and common, if not

identical, legal issues.

36.     The proposed Class(es) meet(s) the criteria for certification under 23(a), 23(b)(2), and/or 23(b)(3).

### Numerosity and Ascertainability:

37.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(l). The members of the Classes are so numerous and geographically dispersed that the joinder of all members is impractical.

38.     While the exact number of Class Members is unknown to Plaintiffs at this time, it is ascertainable; the proposed Classes include thousands of residents and businesses who were unlawfully exposed to toxic chemicals or who had property contaminated by unlawful exposure to toxic chemicals and suffered damages. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

### Predominance of Common Issues

39.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law or fact that predominate over questions affecting only individual Class Members.

40.     The common questions include, without limitation, the following:

a.      Whether Defendants' acts or omissions as set forth herein caused or contributed to the chemical reaction, fire, subsequent release of toxic chemicals, contamination and evacuation and/or "shelter in place" orders;

b.      Whether Defendants are strictly liable for injuries and damages suffered by Plaintiffs and the Classes because Defendants engaged in abnormally dangerous and/or

ultrahazardous activity by storing and utilizing hazardous substances;

c.      Whether Defendants' created a nuisance by emitting air contaminants and/or endangering the health, safety, or welfare of the public, causing unreasonable injury or damage to property;

d.      Whether Defendants created a nuisance by emitting air pollutants of hazardous materials in amounts greater than those set by applicable federal limits, thereby creating a public nuisance making them liable for the cost of abatement;

e.      Whether Defendants created a private nuisance through their acts and omissions, including by the release of toxic contaminants;

f.      Whether Defendants created a public nuisance through their acts and omissions, including by the release of toxic contaminants;

1.      Whether Defendants committed trespass on the property of Plaintiffs and the Classes by their acts and omissions, including by causing hazardous materials to enter and contaminate said property;

J.      Whether Defendants committed trespass to the chattels of Plaintiffs and the Classes through their acts and omissions, including by impairing the property as to its condition, quality, or value; depriving Plaintiffs and the Classes of the possession or use of their chattels for a substantial time; or causing harm to the property;

m.      Whether Defendants' acts and omissions after the derailment caused or contributed to losses and damages sustained by Plaintiffs and the Classes;

n.      Whether the Plaintiffs and the Classes have suffered a loss of use and enjoyment of property, property damage, diminution of property value, extra expenses or other economic damages as a result of the Defendants' acts or omissions as set forth above;

9

**Commented [ZB1]:** The numbering gets wonky though here, not sure how you want it to be

**Commented [ZB2]:** This is the first mention of a derailment so just want to make sure it's included

o.      Whether Plaintiffs' and the Classes' businesses have suffered a loss of income and/or diminution in value due to either (i) the release of toxic and hazardous substances or (ii) the stigma associated with being within the evacuation and/or "shelter in place" zones;

p.      Whether Plaintiffs and the Classes have suffered damages to their businesses due to the chemical release and subsequent events, including forced closings and/or the evacuation;

q.      Whether Defendants' conduct constitutes gross negligence or willful and wanton conduct, including related to the chemical reaction and subsequent release of toxic and hazardous substances;

r.      Whether medical monitoring is an appropriate remedy that should be imposed to provide early detection of future injuries and other benefits to Plaintiffs and the Classes;

s.      Whether monitoring of the diminution in value of Plaintiffs, including the stigma, on the value of the property of Plaintiffs and the Classes is an appropriate remedy; and

t.      Whether Plaintiffs and the Classes are entitled to relief for the damages caused by Defendants.

41.      This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of the Class Members and arise from the same course of conduct by Defendants.

42.      Plaintiffs own property, reside in, work and/or operate a business within the Class Zone surrounding the chemical reaction and release, and owned property, resided in, worked and/or operated a business in the Class Zone at all relevant times.

43.      Plaintiffs' claims are based upon the same legal theories as those of the other Class Members.

44.      Plaintiffs and the other Class Members sustained damages as a direct and proximate

result of the same wrongful acts or omissions in which Defendants engaged.

45.    Plaintiffs' damages and injuries are akin to those of Class Members, and Plaintiffs seek relief consistent with the relief of Class Members.

**Adequacy**

46.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs have retained counsel with substantial experience in prosecuting complex class action and environmental toxic tort litigation, including successful class actions involving mass displacements caused by the release of dangerous substances that are similar to that at issue here.

47.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class Members and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests adverse to those of the Class Members.

48.    Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the interests of Class Members.

**Superiority and Predominance**

49.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy. The common questions of law and of fact regarding Defendants' conduct predominate over any questions affecting only individual Class Members.

50.    Because the damages suffered by certain individual Class Members may be relatively small, the expense and burden of individual litigation would make it very difficult for all individual Class Members to redress the wrongs done to each of them individually, such that many Class Members would have no rational economic interest in individually controlling the

prosecution of specific actions. Moreover, the burden imposed on the judicial system by individual litigation by even a small fraction of the Classes would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

51.     The prosecution of this case as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class Member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

52.     Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority, discretion, and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

**MEDICAL MONITORING CLASS INJUNCTIVE RELIEF PURSUANT TO RULE 23(b)(2)**

53.     In addition, Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the Classes and that require court imposition of uniform relief, thereby making appropriate equitable relief to the Classes as a whole within the meaning of Rules 23(b)(2).

54.     Plaintiffs seek equitable relief in the form of a medical monitoring program and establishment of a medical monitoring fund, and further request injunctive relief compelling Defendants to finance the medical monitoring program and address issues as they develop during program administration.

55.     As a direct and proximate result of Defendants' wrongful conduct as set forth above, Plaintiffs and the Class Members have actually been exposed, and will continue to be exposed, to toxic substances, toxic fumes and thereby suffer, and will continue to suffer a significantly increased risk of serious injury. This increased risk is such that a reasonable physician would order medical monitoring, including but not limited to periodic diagnostic medical testing and necessary examinations.

56.     Early detection and treatment of medical conditions that can result to exposure to toxic and hazardous chemicals is associated with more favorable outcomes. Timely-instituted medical monitoring will reduce the risk of illness and of more severe illness by using medical tests to detect who has been affected by exposure to toxic substances released by the Defendants, and to provide medical intervention that will prevent or reduce the deterioration and long-term health and well-being of Plaintiffs and the Classes they seek to represent. Medical monitoring and testing procedures, including clinical examinations, exist that make the early detection of exposure to those toxic substances that were released into the Class Zone as a result of the chemical release, as well as early detection of disease, both feasible and beneficial.

57.     The increased susceptibility to injuries and irreparable threat to the health of the Plaintiffs and the Class Members resulting from their exposure to toxic substances can be appropriately mitigated and addressed only by the creation of a comprehensive medical monitoring program, supervised by the Court, and funded by the Defendants, that: (a) notifies individuals who

have been exposed to toxic substances of the potential harm from such exposure and the need for periodic testing and examination; (b) provides early detection and treatment of disease and injuries caused by exposure to toxic substances; and (c) gathers and forwards to treating physicians information related to the diagnosis and treatment of injuries and diseases which may result from exposure to toxic substances.

58.     Establishment of a Court-supervised medical monitoring program can readily assure that the proceeds of any monitoring trust fund are reserved for the provision of and/or reimbursement for the above-referenced examination and testing procedures and related activities, guaranteeing the purely equitable use of any trust fund proceeds. The Court's use of its injunctive powers to oversee and direct medical monitoring in this case is an appropriate and necessary method of adjudication.

59.     The precise nature, form, extent and duration of Court-ordered diagnostic monitoring, clinical examinations, research activities, and education programs are a matter for the Court to decide, after hearing and consultation with medical, industrial, modeling, and other experts. Class adjudication of the right to this relief is both appropriate and necessary.

60.     The medical monitoring program should (a) be generally supervised by the Court and may be directly managed by Court-appointed, Court-supervised special masters or trustees; (b) involve the monitoring of all Class Members by designated physicians under a Court-approved medical treatment and research regiment; and (c) involve the collection of medical data utilized for group studies, as well as monitoring and treatment of individuals. During program administration, Defendants should address issues implicated by program administration as they develop.

**COUNT I**
**NEGLIGENCE AND NEGLIGENCE PER SE**

**(On Behalf of All Classes Against All Defendants)**

61.     Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

62.     The chemical reaction, fire and uncontrolled release of toxic chemicals, was caused by the negligence, carelessness and/or recklessness of the Defendants.

63.     Upon information and belief, Plaintiffs aver that the chemical reaction, fire and release of toxic chemicals was caused by the joint negligence, carelessness and/or recklessness of the Defendants, and is the fault of the Defendants as set forth above.

64.     In addition, and in the alternative, the chemical reaction, fire and release of toxic chemicals was caused by defective, unfit and/or unsafe equipment, which was in the care, custody and control of Defendants. Defendants knew or should have known of the dangerous, unfit and/or defective condition of this equipment and are therefore liable for them.

65.     Defendants owed Plaintiffs and the Classes a duty to use reasonable care in manufacturing, maintaining, controlling, and storing hazardous chemicals consistent with federal regulations and industry practices and procedures.  Defendants owed a duty to maintain, monitor, oversee and control its Conyers, Georgia facility to avoid the release of harmful and toxic chemicals into the surrounding community.  Some of these duties are the following:

a.     Adequately warn those in danger of imminent exposure to hazardous chemicals;

b.     Institute proper procedures and training for response to the mechanical malfunction of safety components in the Conyers, Georgia facility.

c.     Institute proper procedures and training for response to the release of hazardous materials;

d.     Institute proper procedures to avoid exposing hazardous materials to the

15

environment;

e.      Have an emergency response plan to contain the spread of hazardous materials into the surrounding air, water, real property, and persons in the event of chemical release;

f.      Timely implement such an emergency response plan;

g.      Handle hazardous materials in a manner which would not cause Plaintiffs and Class Members harm, as Plaintiffs and Class Members were foreseeable victims located within the scope of the risk created by Defendants' conduct;

h.      Properly dispose of or otherwise eliminate the hazardous materials from the exposure site, including avoiding the use of techniques that would further expose Plaintiffs, Class Members, and surrounding areas to hazardous materials;

i.      Evacuate an appropriate geographical area to avoid exposing persons nearby to hazardous materials and causing injury;

j.      Timely evacuate an appropriate geographical area to avoid exposing persons nearby to hazardous materials and causing injury;

k.      Accurately make known the risk of catastrophic injury and illness from exposure to hazardous materials to persons at risk of exposure, including those outside the evacuation zone;

l.      Accurately make known the risk of exposure faced by those persons at risk of exposure, including those outside the evacuation zone; and

m.      Contain the spread of hazardous materials into the surrounding air, water, real property, and persons.

66.      However, inconsistent with federal regulations and industry practice and procedures, Defendants negligently, carelessly and/or recklessly breached their duties to Plaintiffs and the Classes by, among other things:

16

a.      Failing to properly inspect their facility;

b.      Failing to maintain vigilant lookout during the operation of its business;

c.      Failing to remedy defects in equipment that could result in the release of hazardous chemicals;

d.      Failing to properly develop and implement risk reduction programs;

e.      Failing to properly develop and implement risk-based hazard management programs;

f.      Failing to properly develop and implement safety performance evaluation processes;

g.      Failing to operate, maintain, inspect and/or repair the railway and railcars in such a way to ensure their safe and proper operation, particularly when transporting hazardous materials such as chlorine, chloromine, and bromine;

> **Commented [ZB3]:** Same as above

h.      Failing to adequately staff positions that plan, prepare, coordinate, and oversee the manufacture and storage of hazardous  materials;

i.      Failing to adequately hire, train, manage, oversee, and supervise their agents, servants, and employees;

j.      Failing to properly determine the adequacy and skill of their agents, servants, and employees

k.      Failing to ensure that their agents, servants, and employees were properly and adequately instructed and trained in the storage and maintenance of hazardous materials;

l.      Failing to properly instruct and adequately train their agents, servants, employees, concerning safety and emergency procedures in the event of a possible hazardous chemical release;

m.      Failing to adequately warn those in danger of exposure to hazardous chemicals;

n.      Failing to institute proper procedures to avoid exposing hazardous materials to the environment;

o.      Failing to have an emergency response plan to contain the spread of hazardous materials into the surrounding air, water, real property, and persons;

p.      Failing to timely implement such an emergency response plan;

q.      Failing to maintain, store and handle hazardous materials in a manner which would not cause Plaintiffs and the Class Members injury or harm, as Plaintiffs and the Class Members were foreseeable victims located within the scope of the risk created by Defendants' conduct.

r.      Failing to timely evacuate an appropriate geographical area to avoid exposing persons nearby to hazardous materials and causing injury;

s.      Accurately make known the risk of catastrophic injury and illness from exposure to hazardous materials to persons at risk of exposure, including those outside the evacuation zone;

t.      Accurately make known the risk of exposure faced by those persons at risk of exposure, including those outside the evacuation zone;

u.      Failing to contain the spread of hazardous materials and by-products, into the surrounding air, water, real property;

v.      Failing to otherwise reasonably maintain, dispose of, or otherwise handle hazardous materials, including chlorine, chloromine, and bromine;

w.      Otherwise unreasonably causing injury to Plaintiffs and the Class Members in ways further investigation and discovery will reveal.

67.     Defendants owed and breached a duty of reasonable care commensurate with the risk of storing and maintaining hazardous materials.

68.     Defendants owed and breached a duty of reasonable care commensurate with the

18

release and burning of those hazardous materials.

69.     The damages to Plaintiffs and Class Members were also caused by or aggravated by the fact that Defendants failed to take necessary actions following the chemical release to mitigate the danger and harm associated with their operations.

70.     Plaintiffs are currently unadvised of the full extent of the federal or state safety laws and regulations that Defendants or their agents may have violated but reserve the right to rely on such safety laws and regulations shown during discovery. However, upon information and belief, Defendants' conduct violated one or more regulations, including but not limited to the Clean Water Act, Federal Resource Conservation and Recovery Act, and the Federal Comprehensive Environmental Response Compensation and Liability Act

71.     Defendants' violation of such safety laws and regulations constitutes negligence per se.

72.     As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class Members presently suffer, and will continue to suffer, past, present and future physical pain and suffering, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, loss of use and enjoyment, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

73.     Defendants' conduct as alleged herein shows that Defendants acted with gross neglect, willfully and wantonly, maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' and the Class Members' rights so as to warrant the imposition of punitive damages.

**COUNT II**
**STRICT LIABILITY**
**(On Behalf of All Classes Against All Defendants)**

74.     Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

75.     Defendants are strictly liable for the injuries and damages suffered by Plaintiffs and the Classes pursuant to the provisions of the Restatement (Second) of Torts § 519 and 520.

76.     The manufacture, use, and storage of chlorine, chloramine, bromine, and other toxic chemicals are an abnormally dangerous and/or ultrahazardous activity under the definition set forth in Restatement (Second) of Torts § 519 and 520.

77.     The Defendants engaged in an abnormally dangerous and/or ultrahazardous activity by manufacturing, storing, and using hazardous substances, in and around a residential community, making them strictly liable for any resulting damages.

78.     As a direct and proximate result of the Defendants' abnormally dangerous and/or ultrahazardous activity, Plaintiffs and Class Members presently suffer, and will continue to suffer, past, present and future physical pain and suffering, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

79.     Accordingly, the Defendants are strictly liable, jointly and severally, without regard to fault, for all of the damages to Plaintiffs and the Class Members, which were a direct and proximate result of the release of hazardous substances which harmed Plaintiffs, and the Classes as described above.

20

80.     Defendants' conduct as alleged herein shows that Defendants acted with gross neglect, willfully and wantonly, maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' and the Class Members' rights so as to warrant the imposition of punitive damages.

**COUNT III**
**PUBLIC NUISANCE**
**(On Behalf of All Classes)**

81.     Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

76.     The noxious odors, pollutants, and air contaminants which entered Plaintiffs' and Class Members' property originated from the Conyers, Georgia facility owned, maintained, and/or operated by Defendants.

77.     The noxious odors, pollutants, and air contaminants emanating from Defendants' facility are a public nuisance by virtue of the facility's location near residential areas, the inadequacy of its abatement plan, as well as its influence on members of the public.

78.     The odors, pollutants, and air contaminants invading Plaintiffs' and Class Members' property are indecent and/or offensive to the senses, and obstruct the free use of their property so as to significantly and unreasonably interfere with the comfortable enjoyment of life and/or property, including but not limited to the following ways:

a.     Causing Plaintiffs (and Class Members) to remain inside their home;

b.     Causing Plaintiffs (and Class Members) to keep doors and windows closed when weather conditions otherwise would not so require.

c.     Causing Plaintiffs (and Class Members) embarrassment and reluctance to invite guests to their homes.

21

79.     Defendants, by failing to implement a sufficient odor abatement plan or otherwise failing to repair and maintain its facility to abate nuisances, has acted, and continues to act, in conscious disregard to public health, safety, peace, comfort, and/or convenience.

80.     Defendants' emission of odors, pollutants, and air contaminants is proscribed by law.

81.     The odors, pollutants, and air contaminants produced by Defendants' facility are continuous in nature and have a permanent and long-lasting effect.

82.     Defendants are aware of the odors, pollutants, and air contaminants that emanate from its Conyers, Georgia facility and have knowledge of the significant impact the odors have on residents' lives.

**COUNT IV**
**PRIVATE NUISANCE**
**(On Behalf of All Classes Against All Defendants)**

83.     Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

84.     At all times relevant hereto, Defendants knew or should have known that chlorine, chloromine, and bromine were hazardous and harmful to real property and human beings, and it was substantially certain that improper, handling, and disposal of these materials would cause injury to Plaintiffs and the Class Members and their property.

85.     Defendants, through the negligent, reckless and/or intentional acts and omissions alleged herein, have contaminated real property located in Rockdale County, Georgia.

86.     Defendants, through the negligent, reckless and/or intentional acts and omissions alleged herein, have released hazardous chemicals onto Plaintiffs' and the Class Members' land and have contaminated Plaintiffs' and the Class Members' real property, and persons.

87.     The Defendants' contamination of Plaintiffs' and the Class Members' property with hazardous chemicals has unreasonably interfered with the rights of Plaintiffs and the Class Members to use and enjoy their property, causing them to suffer injuries different in kind and degree from others in surrounding areas. Indeed, this interference is substantial in nature. It has caused and is causing Plaintiffs and the Class Members to refrain from occupying or using their real properties.

This has, in turn, caused significant loss of income, out of pocket expenses, loss of use and enjoyment and inconvenience.

88.     Defendants' conduct has also substantially interfered with Plaintiffs' and the Class Members' ability to enjoy their property, to avail themselves of their property's value as an asset and/or source of collateral for financing, and to use their property in the manner that they so choose. It has also reduced the value of their land.

89.     Defendants' negligent, reckless and/or intentional acts and omissions were unreasonable and constitute invasion of the property rights of Plaintiffs and the Class Members.

90.     Plaintiffs and the Class Members, unlike the public generally, have suffered specific injuries as a result of Defendants' tortious, illegal, and wrongful conduct.

91.     Defendants' improper use, handling, and maintenance of hazardous chemicals and the contamination of Plaintiffs' and the Class Members' property resulting therefrom, constitutes a private nuisance. This nuisance has directly and proximately caused Plaintiffs and the Class Members to presently suffer, and continue suffering in the future, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, an increased risk of associated disease or illness, and the present need for medical

monitoring to ensure early detection of any such disease or illness.

92.     Defendants' conduct as alleged herein shows that Defendants acted with gross neglect, willfully and wantonly, maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' and the Class Members' rights so as to warrant the imposition of punitive damages.

**COUNT V**
**TRESPASS**
**(On Behalf of Resident Classes Against All Defendants)**

93.     Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

94.     At all times relevant hereto, Defendants knew or should have known chlorine, chloromine, and bromine to be hazardous and harmful to real property, animals, and human beings, and it was substantially certain that their use, emission, discharge, disposal, distribution, spreading and/or release of these hazardous materials would cause injury to Plaintiffs and Class Members and their property.

95.     Defendants, through their activities alleged herein, caused hazardous materials to enter and contaminate Plaintiffs' and the Class Members' property. They intentionally, knowingly, and negligently used, discharged, spread, deposited and/or released these hazardous materials knowing that those toxins would contaminate the real property of individuals like Plaintiffs and the Class Members.

96.     Defendants, through their activities alleged herein, authorized, requested, or caused others to handle, store, or use hazardous chemicals in a manner which they knew was substantially likely to cause hazardous materials to enter and contaminate Plaintiffs' and the Class Members' properties. Through their actions, they intentionally, knowingly, and negligently caused hazardous

materials to enter Plaintiffs' and the Class Members' land.

97.    At all relevant times Defendants were aware that their conduct in causing the release of hazardous chemicals into the surrounding atmosphere was contrary to Plaintiffs' and the Class Members' rights in their property.

98.    At all times, Defendants' conduct displayed indifference to and disregard for Plaintiffs' and the Class Members' rights to their property.

99.    Defendants, through their activities regarding hazardous materials alleged herein, failed to act in the manner of an ordinary, careful person or business.

100.    The Defendants' intentional, knowing, and negligent contamination, and continuing contamination, of Plaintiffs' and the Class Members' real and personal property with hazardous materials has interfered with the rights of Plaintiffs and the Class Members to use and enjoy their property and constitutes trespass and continuing trespass. Defendants' trespass has substantially impaired Plaintiffs' and the Class Members' rights in the use and enjoyment of their property as well as economic and property damages as alleged herein.

101.    Defendants' trespass has proximately caused, and will continue to cause, Plaintiffs and the Class Members real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, and inconvenience.

102.    Defendants' conduct as alleged herein shows that Defendants acted with gross neglect, willfully and wantonly, maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' and the Class Members' rights so as to warrant the imposition of punitive damages.

**COUNT VI**
**MEDICAL MONITORING**

**(On Behalf of All Classes Against All Defendants)**

103.    Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

104.    Plaintiffs and the Class Members have been exposed to significant amounts of hazardous chemicals including chlorine, chloromine, and bromine that are far higher than normal background levels. These toxic substances have been proven to cause health complications in humans.

105.    The hazardous materials carried by and released by Defendants are highly toxic substances.

106.    Plaintiffs and the Classes were exposed to these toxic substances, as a direct and proximate result of Defendants' tortious actions, including Defendants' negligent, ultrahazardous, and willful and wanton conduct as alleged herein.

107.    As a proximate result of their exposure to these toxic substances, Plaintiffs and the Classes have a significantly increased risk of developing future health complications. This increased risk makes periodic diagnostic medical examinations reasonably necessary.

108.    This increased risk would warrant a reasonable physician to order monitoring.

109.    Early diagnosis of these health conditions has significant value for Plaintiffs and the Class Members because such diagnoses will help them monitor and minimize the harm therefrom.

110.    Monitoring procedures exist that make early detection of these health complications possible and beneficial. These monitoring procedures are different from those normally recommended in the absence of toxic exposures and are reasonably necessary as a direct and proximate result of Plaintiffs' and the Class Members' exposures to the toxic substances, as a result

of Defendants' actions as alleged herein.

111.    As a direct and proximate result of Plaintiffs' and the Class Members' exposure to the toxic substances, surveillance in the form of periodic medical examinations is reasonable and necessary, because such surveillance will provide early detection and diagnosis of harmful and debilitating injuries potentially resulting from exposure to the toxic substances, toxic fumes and carcinogens and, as a remedy for the conduct alleged.

112.    As a result, Plaintiffs and the Classes should be awarded the quantifiable costs of such a monitoring regime.

**COUNT VII**
**GROSS NEGLIGENCE/WILLFUL AND WANTON CONDUCT**
**(On Behalf of All Classes Against All Defendants)**

113.    Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

114.    At all times relevant, Defendants owed a duty to refrain from grossly negligent, willful, wanton, reckless and outrageous conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and the Class Members.

115.    Upon information and belief, Defendants were, at all times relevant, aware that chlorine, chloromine, and bromine are highly toxic and/or otherwise harmful to humans.

116.    Upon information and belief, Defendants were, at all times relevant, aware of the considerable health risks associated with the release of chlorine, chloromine, and bromine into the air, water, and land, including the risk of causing various health complications in the surrounding population.

117.    Upon information and belief, Defendants were, at all times relevant, aware that

their release of chlorine, chloramine, and bromine could result in the unreasonably dangerous emission of hazardous materials into the surrounding communities.

118.    Notwithstanding this actual knowledge, and inconsistent with federal regulations and industry practice and procedures, Defendants breached their duties to the Plaintiffs and Class Members.

119.    Defendants' failures in these and other respects in the face of actual knowledge regarding the risks of unreasonable hazardous material discharge constitute gross negligence, willful, wanton, reckless and outrageous conduct, and demonstrates an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and the Class Members so as to warrant the imposition of punitive or exemplary damages.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and the Class Members proposed in this Class Action Complaint, respectfully request that the Court enter judgment in their favor and against each Defendant as follows:

a.    An order certifying this action as a class action;

b.    An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial;

c.    An order enjoining Defendants' unlawful conduct;

d.    An award of attorney's fees, expert witness fees, costs, and Class representative awards as provided by law;

e.    An aware of expenses of litigation pursuant to O.C.G.A. § 13-6-11 due to Defendants' bad faith;

f.    An award of interest as provided by law, including pre-judgment and post-judgment

interest;

      g.     Such other and further relief as this Court may deem just, equitable, or proper.

<u>**JURY TRIAL DEMAND**</u>

     Plaintiffs demand a jury trial on all issues so triable.

Dated:  October 4, 2024

> <u>/s/ Brent Kaufman</u>
> Brent Kaufman, GA Bar No. 441430
> Paul J. Doolittle, Esq.*
> Roy T. Willey, IV, Esq.*
> **POULIN | WILLEY | ANASTOPOULO**
> 32 Ann Street
> Charleston, SC 29403
> Telephone: (803) 222-2222
> Fax: (843) 494-5536
> Email: Brent.Kaufman@poulinwilley.com
>            Paul.doolittle@poulinwilley.com
>            Roy@poulinwilley.com
>            cmad@poulinwilley.com
>
> ***ATTORNEY FOR THE PLAINTIFF***

29